WALKER vs. WILSON and another.

Where the description in a deed was of certain lands, "together with the mill,
&c., and with the right to raise a dam sufficient to raise the water seven feet
high," *habendum, &c.,* a covenant by the grantor, that he was well seized of
the "premises," and had good right to sell and convey the same, applies to
and embraces the *right to raise the dam* to the height specified.

If the grantor had not that right, the damages sustained by the grantee in con-
sequence of that breach of the covenant, are a proper subject of *counter-claim,*
in an action by the grantor to foreclose a mortgage given for the purchase
money.

APPEAL from the Circuit Court for *Dane* County.

This was an action to foreclose a mortgage given to secure
the purchase money of real estate conveyed by the plaintiff
to the defendants.  The tenor of that conveyance is stated
in the opinion of the court.

The answer, after setting forth the deed, with its cove-
nants, alleged that the plaintiff was not, at the time of its exe-

cution, seized in fee of the premises therein described, " and land, and could not grant and convey the said land, and the right to raise a dam, as therein mentioned;" that the defendants "could not by force of said deed lawfully enjoy and possess said land, and the right to raise a dam on said land sufficient to raise the water seven feet high;" "that the land without that right was nearly worthless to them;" "that by reason of the plaintiff's not fulfilling his said covenants, the defendants did not and could not obtain and have the right to raise a dam on said land sufficient to raise the water seven feet high;" that after expending $3,000, in good faith, in improving said supposed water power, they had been obliged to abandon it, and so the plaintiff had broken his said covenant, to their damage, &c. Reply in denial. There was also an issue as to whether the plaintiff had induced the defendants to purchase the property by *fraudulent* representations that he had a right to raise the dam referred to in the deed, seven feet high, &c. ; but the circuit court allowed the defendants to introduce evidence upon that subject, and found for the plaintiff upon that issue, and rendered judgment of foreclosure. The case is otherwise sufficiently stated in the opinion of the court.

January Term, 1861.

WALKER
v.
WILSON et al.

*J. C. Hopkins*, for appellants:

The covenant, the breach of which is set up in the answer, is a covenant of *seisin*, and not of *warranty*. The breach, consequently, was *immediate*, and did not depend upon eviction; and the defendants could have brought an action immediately for whatever damages they had sustained by such breach. A defense based upon such a breach, in actions for foreclosure, is clearly within the provisions of the Code relating to counter-claims. Sec. 10, subd. 2, and sec. 11, subd. 1, of chap. 125, R. S. ; Van Santv. Pl., sec. 4, and cases there cited ; *Flanders vs. McVickar*, 7 Wis., 372.

*Orton & Bryant*, for respondent:

1. There is no covenant in the deed in relation to the water-power, or right to raise the water, and no such covenant averred in the defendants' answer. *Pratt vs. Sanger*, 4 Gray, 84. 2. Before the Code, where a note and mortgage were given for the purchase money of land, it was no

defense to a foreclosure suit that the title had failed, but the defendant was left to a suit at law on his covenants. 7 Conn., 149; 26 Wend., 109, 114; 1 Johns. Ch., 213; 3 Barb. Ch., 438; 5 Conn., 528; 7 How. (U. S.), 159; 6 Yerg., 108; 3 Sandf. Ch., 344; 2 Kent's Comm., 472; 1 Hilliard on Mort., 387. 3. The provisions of the Code were designed, not to introduce new defenses, but to affirm the right of the defendant to recover his damages in those cases in which a recoupment was proper before the Code. 2 Sandf. Ch., 120; 10 Pr. R., 382; 13 id., 458; Voorhies' Code, 210, b; 1 Monell's Pr., 581. 4. Actions of foreclosure must be tried by the *court*, but actions for a breach of covenant, by a *jury*.

April 10.  *By the Court*, COLE, J.  This was an action to foreclose a mortgage. The notes and mortgage were given to secure the purchase money of certain premises, consisting of some thirteen acres of land, with a mill and certain privileges, on Black Earth Creek. The appellants alleged in their answer, that the respondent fraudulently represented, at the time of the purchase, that there was a good and valuable water power upon the land, and that he had the right to raise and maintain a dam on the land sufficient to raise the water in the creek, at the dam, to the height of seven feet above its ordinary height at that point, while in fact he had no such right; and that the covenants of his deed are broken; claiming damages for such breach by way of counter-claim. The deed granted and conveyed the piece of land, describing it, "together with the mill and all the privileges and appurtenances thereunto belonging, or in any way appertaining, and *with the right to raise a dam sufficient to raise* the water seven feet high," with the usual *habendum* clause. The respondent covenants "that he is well seized in fee of the aforesaid premises, and has good right to sell and convey the same; that the same are free of all incumbrances whatsoever, and that the aforesaid premises in the quiet and peaceable possession of the parties of the second part, their heirs and assigns, against all and every person lawfully claiming or to claim the whole or any part thereof, he will forever warrant and defend." On the trial, the appellants, in order to main-

tain and prove their defense set up in the answer, offered in evidence the deed of the respondent to them, (of the same date as the mortgage of the same property,) which contained the covenant relied on; and offered to show, in connection therewith, that there was not upon said premises the right to raise the water of Black Earth Creek seven feet high by a dam, as stated in the deed, for the purpose of showing a breach of the covenant of seizin in the deed as a counter-claim to the action. The circuit court held, that a breach of the covenants of the deed could not be set up as a defense to the action on the notes and mortgage, and refused to allow the deed to be given in evidence as the basis of the counter-claim. The correctness of this ruling is the principal question before us.

Under the old practice it seems to have been well settled, that a purchaser of land who was in the undisturbed possession thereof, would not be relieved in equity against his contract to pay the purchase money, on the mere ground of a defect in the title, when there had been no fraud practised upon him. That doctrine is quite thoroughly discussed and fully established in the following cases : *Bumpus vs. Platner*, 1 J. C. R., 212 ; *Abbott vs. Allen*, 2 id., 519 ; *Edwards vs. Bodine*, 26 Wend., 109 ; *Woodruff vs. Bunce*, 9 Paige, 443 ; *Miller vs. Avery*, 2 Barb. Ch. R., 583 ; *Platt vs. Gilchrist*, 3 Sandf. R., 118.

In such a case, it is said that while the grantee remains in possession, enjoying the fruits of his purchase, no real damage has been sustained by him ; and that it would be inequitable to give him compensation for mere remote or possible future loss, when the defective title might, by adverse possession, ripen into a complete and perfect title. And if he should be evicted, there was no hardship in remitting him to the covenants in his deed and to his action at law upon them, where he had a full and complete remedy. But still where there had been an eviction, equity sometimes interfered and restrained the collection of unpaid purchase money, particularly where there were covenants of title in the deed. And the above cases show that even when an action of ejectment has been commenced to recover the possession of mort-

gaged premises, by a third party claiming under a paramount title, an injunction has been granted to stay proceedings on a bond and mortgage for the purchase money. See also *Johnson vs. Gere*, 2 J. C. R., 546; *Leggett vs. McCarty*, 3 Edwards' Chan. R., 126.

Here the injury complained of is, that the respondent was not seized in fee of the premises, and could not grant and convey them with the right to raise the water to the height specified in the deed. It is obvious that this was a breach of the covenant of seizin, for which the appellants might immediately have brought an action; and it is insisted that whatever damages they have sustained in consequence of this breach of the covenant, constitutes a proper counterclaim under the code. It will be seen that the appellants do not claim in their answer, that there has been a total breach of the covenant of seizin as applied to the entire premises conveyed, but only a partial failure of title so far as the right to raise and maintain a dam at the given height is concerned. This right, it is alleged, the respondent did not possess, and therefore could not and did not convey by the deed. What may be the damages to the mill and the premises in consequence of this partial failure of the title, it is impossible now to tell. But it is evident that the damages might have been serious, as such a right might be highly valuable and important. It certainly would be a subject of distinct and positive proof, and we can perceive no valid objection to permitting the damages to be proven in this action for the purchase money, and to their constituting a valid defense *pro tanto*. What good objection can exist to this practice? It avoids a multiplicity of suits. The damages for the breach of the covenant can be ascertained and definitely determined. That there is a clear breach of the covenant of seizin there can be no doubt. How much are the appellants injured by it, is the question. They proposed showing the extent of their injury, and offered the deed as the foundation of their defense. But the court held the evidence incompetent, and that it did not constitute a counterclaim. Was the court right in this view of the matter? We think not.

The statute permits a defendant to set up in his answer any new matter constituting a counter-claim or defense. Subd. 2, sec. 10, chap. 125. The counter-claim, it says, must be one existing in favor of a defendant and against a plaintiff, between whom a several judgment might be had in the action, and must arise out of one of the following causes of action: 1. A cause of action arising out of the contract or transaction set forth in the complaint as the foundation of the plaintiff's claim, or connected with the subject of the action: 2. In an action arising on a contract, any other cause of action arising also on contract and existing at the commencement of the action. Sec. 11.

The claim set up in the answer in this case, exists in favor of the appellants and against the respondent, and arises upon a contract and out of the transaction set forth in the complaint. The covenant was broken at the time the suit was brought, and the appellants had a good cause of action upon their deed. They did not see fit to bring their suit, but now desire to detain the purchase money to the extent to which they would be entitled to recover damages for a failure of title to part of the premises. See *Knapp vs. Lee*, 3 Pick., 459; *Rice vs. Goddard*, 14 id., 293. We cannot see why this does not constitute a " counter-claim," within the meaning of the code. The spirit of that enactment is to prevent circuity of action and multiplicity of suits. No matter whether the counter-claim be for a breach of a covenant of seizin, or for unliquidated damages upon any other contract; so long as it comes within the requirements of the Code, it may be set up as a defense in the answer. *Flanders vs. Mc-Vickar*, 7 Wis., 372.

We had at first doubt, as to whether the covenant of seizin was intended to apply to and embrace the right to maintain the dam of sufficient height to raise the water seven feet. Its language is that the grantor " is well seized in fee of the aforesaid premises," &c, We think the covenant of seizin was intended to be as broad as the granting part of the deed, and to apply to all the estate conveyed. A right to maintain a dam of that height might be essential to the beneficial use and enjoyment of the mill. The parties might

January Term, 1861.

well be supposed to have contracted with a view to that head of water. It may be necessary and requisite to propel the machinery. We therefore feel bound to say, that upon the face of the deed the intention is apparent to make the covenant of seizin as comprehensive as the granting part thereof. See *Pickering vs. Stapler*, 5 S. & Rawle, 107 ; *Whitney vs. Olney*, 3 Mason C. C., 280 ; *Stackpole vs. Curtis*, 2 Red. (Me.), 383 ; *Farrar vs. Stackpole*, 6 Greenl., 154 ; *Pratt vs. Sanger*, 4 Gray, 84.

The conclusion at which we have arrived is, that the evidence offered on the trial to sustain the answer was competent, and was erroneously ruled out by the court.

The judgment must therefore be reversed, and a new trial ordered.