CHARLES CLEVELAND, RESPONDENT, v. THE NEW JERSEY STEAMBOAT COMPANY, APPELLANT.

*Carrier of passengers — negligence — misconduct of third persons — evidence.*

The defendant was accustomed to close an opening in the side of one of its boats, at the gangway, by inserting a gate resting in staples, and secured on the outside by stanchions, and on the top by a rail. After the boat had left the dock the gate was inserted; and after it had proceeded about twenty feet, and before the stanchions, which were used to prevent its swinging outward, or the top rail had been put in their places, the plaintiff was pushed, by a rush of the passengers, through the gate and into the river. *Held,* that the defendant was guilty of negligence in allowing the boat to leave the dock before the gate was properly secured.

Negligence of a third person, contributing to the injury, is no excuse for the negligence of the person sued.

Upon the trial the defendant asked: "Is it customary on the Hudson river, on passenger boats leaving a dock at New York, to wait for the departure until the gates at the gangway entrance are put in;" which question was objected to and ruled out. *Held,* that its rejection was proper; that the offer was, in effect, to show, as an excuse for defendant's negligence, a custom of others to be equally negligent.

Statements of a patient to his physician as to the former's condition, *held* competent evidence.

APPEAL from a judgment in favor of the plaintiff, entered upon the report of a referee.

The action was brought against the defendant, as a common carrier of passengers, to recover damages for alleged negligence. The facts, as found by the referee, were as follows:

That the defendant was a corporation, as alleged in the complaint; that in the month of September, 1873, defendant owned and ran the steamer 'St. John,' between the cities of New York and Albany, for the conveying of passengers, and that plaintiff, on the eighth of said September, went on board the said 'St. John,' intending to take passage on her to the city of Albany.

That the gangway opening on the starboard side of said boat, was about nine feet wide, and when closed, was closed by a gate resting at each end in a staple driven into a stanchion or upright at each side of the opening, and prevented from swinging outward by the bearing on the staples, and by two upright stanchions

outside of the gate, let into the deck some ten inches. That the top rail when in its place was secured there by slides of iron. That the opening of the said gangway was, when the gate, stanchions and top rail were in their places and the fastenings were in their places, properly and sufficiently closed, and that such gate, stanchions, top rail and fastenings, when in their places, were, in construction and quality, sufficient for the protection of passengers.

That at the time of the starting of the said 'St. John,' on the said eighth of September, and until the said plaintiff was thrust overboard, he was standing four or five feet from the outside of the steamer, and in a line about two feet forward of the gangway opening. That at the time of the starting of said boat, the gangway gate on the starboard side was put in its place; that the two stanchions necessary to prevent said gate being pushed out, and the top rail to secure said gate in its place, had not been put in their places at the time of the starting of the said boat; nor were they put in their places when the said steamer had moved forward from its starting place some twenty feet, and was, at point of gangway opening, out from the pier some six to ten feet.

That after said steamer had left its starting place, on said eighth day of September, and before the two stanchions and the top rail had been put in their proper places, to fully guard the starboard gangway opening, the said plaintiff, by a sudden rush and crowd of the passengers, was thrust overboard through the starboard gangway opening. That the said gangway opening was negligently and carelessly left without the full and proper protection provided on said boat, after the 'St. John' had commenced its departure and at the time plaintiff was thrust overboard, and that by such negligence and carelessness on the part of the officers and crew of the said steamer, the agents of said defendant, the plaintiff was thrust and crowded overboard.

That the said plaintiff did not contribute, by any negligence on his part, to his being thrust overboard, as above stated. That the said plaintiff received damage in consequence of being thrust overboard, as aforesaid, in the sum of $1,000."

The referee also found, in pursuance of rule 41, that the man who put in the gate, stepped to it to put it in, and ordered the

passengers to step aside, but no order to passengers to stand out of the gangway was heard by plaintiff; that the gate was put properly in its place before the plaintiff fell overboard, and the mate was about to put the top rail on, and had turned to take it in his hands for that purpose, when the plaintiff was pushed overboard by the other passengers; that some one passed through the forward end of the gate on to the wearing piece after the boat started; that the gate was not broken on the occasion; that the plaintiff left the dock, after he was picked up, with a friend, took tea with him, went off to Albany by cars, looked up a friend there, who went on board the boat with him, and with him took the train to Utica the next morning; that the plaintiff had a bad cold when he reached Albany, and caught it the night of the accident.

The referee ordered judgment for plaintiff for $1,000.

*H. R. Selden,* for the appellant.

*Risley, Stoddard & Matteson,* for the respondent.

MERWIN, J.:

The plaintiff cannot recover unless the injury was caused by the negligence of the defendant; nor even then, if he had so far contributed to the accident, by want of ordinary care, that, but for that, the accident would not have happened. (Redfield on Carriers, § 378.) Negligence is not actionable unless it is the proximate cause of the injury. It may, however, be the proximate cause of an injury of which it is not the sole or immediate cause. If the defendant's negligence concurred with some other event, other than plaintiff's fault, to produce the plaintiff's injury, so that it clearly appears that, but for such negligence, the injury would not have happened, and both circumstances are closely connected with the injury in the order of events, the defendant is responsible, even though his negligent act was not the nearest cause in the order of time. (Shearman & Redfield on Negligence, § 10.) A carrier of passengers is not an insurer; nor is he bound to take every possible precaution against danger, but he is bound to use the utmost care which is consistent with the nature and extent of the business in which he is engaged, in the providing

of safe and suitable means of transportation, as well as in the management of the same, and in making such reasonable arrangements as a prudent man would make to guard against all dangers, from whatever source arising, which may naturally, and according to the usual course of things, be expected to occur. (*Simmons* v. *New Bedford Company*, 97 Mass., 361, 368.) Any violence must be provided against, which might reasonably be anticipated, or naturally be expected to occur, in view of all the circumstances. (ALLEN, J., in the *Putnam Case*, 55 N. Y., 114, approving SHIPMAN, J., in *Flint* v. *Norwich and N. Y. Trans. Co.* (34 Conn., 554.) In *Bowen* v. *N. Y. Central R. R. Co.* (18 N. Y., 408), it is said that the precautions to be taken must be such as would be dictated by the utmost care and prudence of a very cautious person, and this rule has been since reiterated. (*Deyo* v. *N. Y. C. R. R. Co.*, 34 N. Y., 11; *Maverick* v. *Eighth Ave. R. R. Co.*, 36 id., 381.) That the negligence or misconduct of a third party contributed to the injury, is no excuse. The results of such acts that can reasonably be anticipated, must be guarded against as much as those of any other cause. (*Eaton* v. *Boston and Lowell R. R. Co.*, 11 Allen, 500; *McElroy* v. *Nashua and L. R. R. Co.*, 4 Cush., 400; *Pittsburgh, etc., R. R. Co.* v. *Hinds*, 53 Penn., 512.) In the case in 97 Mass. (*supra*), the injury was occasioned by the fall of a small boat, which was suspended over a portion of the deck where it was proper for passengers to be. The fall was occasioned, in part at least, by the carelessness of the people in the boat. In the present case, the negligence complained of consisted in starting the boat before the barrier at the gangway was properly secured. The passage-way was about nine feet wide, and the provision made by the company for its closing, was a portable gate, resting at each end on the top in a staple, and at the outside at each end were placed stanchions, which prevent swinging, and on the top of the whole was placed a top rail, secured by slides of iron. When the gates, stanchions, and top rail were all in their places, and secured as provided to be secured, there is no doubt about their sufficiency. When the boat started, the gate was set in its place, but the stanchions, which at each end prevented its swinging outward, were not put in; nor was the top rail put on, which would keep the gate and stanchions in their places, and prevent the gate being

lifted out, or pressed out by bending. In this condition the boat proceeded about twenty feet, being, at the point of the passageway, from six to ten feet from the pier, when, by a sudden rush or crowd of the passengers, the gate was thrown or pressed open, and the plaintiff thrust into the water. From this brief statement of the occurrence and the condition of the barrier, it is clear to me that the officers of the defendant were guilty of negligence. No one would say they were not negligent, if the gate had not been placed in at all. Is it varied much by saying it was placed in, in a defective or deceptive manner? I think not. But it may be suggested that the sudden crowd or rush was not reasonably to be anticipated, and therefore the company not liable for not providing for it. The very object of barriers of this kind is to prevent the results of such commotions. Vessels are liable to be crowded, especially at gangways, at the time of starting. The fact that the company provided barriers of such character, shows that they anticipated their necessity and use, and appreciated the importance of a strong, well secured gate. The failure to use the appliances provided, seems to me a reckless disregard of the safety of the passengers.

In the *Dougan Case* (56 N. Y., 1), cited by defendant's counsel, the proof of negligence was the omission to inclose the space between the rail and the deck, so as to preclude the possibility of slipping under it. Such an accident was not likely to occur, and never had before, and there was no evidence that such danger would be apprehended by a reasonable, prudent person, and the boat had been run as it was for a number of years. On these grounds the court held there was no proof of negligence to go to the jury. In the *Crocheron Case* (56 N. Y., 656, not fully reported), it appears that upon each step of the main stairway of the boat, was put a brass plate, or covering, which was corrugated save where it turned over the edge of the step, and there it was left smooth and slippery. Upon this the plaintiff slipped and was injured. The stairs were so fixed on the best boats. They had been long in use on defendant's boat, and no injury was ever caused before, and there was evidence that that was the best covering in use. Held, no negligence. Such injury evidently could not have been reasonably expected. In the *Cornman Case* (4 Hurl. & Nor., 781), the defendant, a railway

company, had on its platform, standing against a pillar which passengers passed in going to and from the trains, a portable weighing machine, used for weighing passengers' baggage, and the foot of which projected about six inches above the level of the platform. It was unfenced, and had stood in the same position without accident for about five years. The plaintiff, being at the station on Christmas day inquiring for a parcel, was driven by the crowd against the machine, caught his foot in it and fell over it. Held, no evidence of negligence, the machine being in a situation where it might be seen, and the accident being one which could not have been reasonably anticipated. In the *Brown Case* (58 Me., 384), a child, nine years old, jumped on to a draw-bridge while it was being closed. A nonsuit was granted on the ground of contributory negligence of plaintiff. This was affirmed, the court saying there was no negligence on the part of defendant, although there was no one there to keep people off till the closing of the draw, it being in the daytime. In the *Crafter Case* (L. R. [1 C. P.], 300), the staircase leading from a railway station to a highway, had, at the edge of each step, a strip of brass, which had originally been roughened, but had become, from constant use, worn and slippery. The staircase was about six feet wide, a wall on each side, but no hand-rail. It was otherwise unobjectionable. The plaintiff, a frequent traveler, in ascending from the station, slipped and fell. Held, no evidence of negligence against the company, the staircase having been long used without accident, and there being nothing unusual or improper in the construction ; nothing to cause danger to a person walking with ordinary circumspection.

These cases are relied on by defendant's counsel, but I do not think they lay down any rule that would prevent a recovery here. The questions here are simply these : Was the accident in question one that could have been reasonably anticipated, and if so, could it have been avoided by the best of care ? Both of these questions I answer in the affirmative. It could have been reasonably anticipated, for provision had in fact been made against it. It could have been avoided by even ordinary care, for the use of the means actually provided would have prevented it. The direct cause of the accident was an act whose occurrence was contemplated, and which the company was bound to provide against.

Nor can I see how the plaintiff was guilty of any contributory negligence. A large number of passengers was passing on board. They remained, and were so allowed by the officers of the boat, near the gangway. The ticket office was also near there. The plaintiff, as he comes on, steps several feet within the rail and stops a moment to wave his handkerchief; the boat starts; the crowd press to the gate, which gives way, and the plaintiff is pushed overboard. The whole happens very quickly. I do not see how the plaintiff can be charged with any negligence. He had a right to be where he was, and had reason to suppose he was safe, and, for aught that appears, would have been, if the gate had been properly secured.

Upon the trial, the defendant asked the question: " Is it customary on the Hudson river, on passenger boats leaving a dock at New York, to wait for departure until the gates at the gangway entrance are put in ? " This was objected to by plaintiff and ruled out. No case is cited by defendant's counsel broad enough to sustain this question. Evidence of the character of a structure, either generally or as compared with similar structures used by others, and evidence of whether accidents of that kind have ever happened before, have been sometimes admitted. But that does not reach the present point. It is, in effect, an offer to show, as an excuse for its negligence, a custom of others to be equally negligent. I know of no principle to sustain it.

The defendant also offered to show by a witness, his opinion whether or not the plaintiff stood in a safe and proper place. This was ruled out, and I think correctly. Plaintiff's negligence must be proven by facts, not by opinions. Evidence was also offered by defendant, of opinions whether or not the gate in question was properly constructed, and a safe and proper one. No question was made by plaintiff but that it was, and the evidence was properly ruled out as immaterial.

One of the physicians called by plaintiff testified that when he first saw plaintiff, he complained that he was restless nights.. This the defendant moved to strike out, and the referee denied the motion. The evidence was competent within the rule in *Caldwell* v. *Murphy* (11 N. Y., 416, 419).

The damages allowed by the referee were not excessive. There

is no evidence sufficient to show that the injury was aggravated by the act or misconduct of the plaintiff.

I think the judgment should be affirmed.

Present — Smith, P. J., Gilbert and Merwin, JJ.

Gilbert, J., dissented.

Judgment affirmed.